Milton W. Hathaway, Jr., Esq.
AZ State Bar No. 005442
**MURPHY, SCHMITT, HATHAWAY & WILSON, P.L.L.C.**
Attorneys at Law
325 W. Gurley Street, Suite 102
Post Office Box 591
Prescott, Arizona 86302-0591
(928) 445-6860
info@mshwlaw.com

Attorneys for Plaintiffs

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| SHARLINE KRAUSE, individually, and on behalf of all statutory beneficiaries of DREY KRAUSE,<br><br>    Plaintiff,<br><br>vs.<br><br>MOHAVE COUNTY, ARIZONA; MOHAVE COUNTY SHERIFF DOUGLAS SCHUSTER AND CYNTHIA SCHUSTER; JORDAN T. SELMANSON; ASHLEY N. SELMANSON; RICHARD SCHILLER; KATHLEEN SCHILLER,<br><br>    Defendants. | Case No. 3:17-CV-08185-JJT<br><br>**FIRST AMENDED COMPLAINT**<br><br>*(Jury Trial Requested)* |

Plaintiff, for her claims against Defendants, alleges as follows:

**PARTIES**

1. Plaintiff, Sharline Krause, is the mother of Drey Krause, deceased, and brings this matter individually and on behalf of the statutory beneficiaries of Drey Krause.

///

2. The statutory beneficiaries that Plaintiff, Sharline Krause, is aware of at this time include herself, Drey Krause's mother; Lisa Krause, Drey Krause's wife; Alisha Krause, Drey Krause's daughter; and Ryan Adelman, Drey Krause's son.

3. Defendant, Mohave County, is a public entity located within the state of Arizona and is responsible for and liable for the acts of the Mohave County Sheriff's Office.

4. Mohave County Sheriff Douglas Schuster and Cynthia Schuster are husband and wife and are residents of Mohave County, Arizona. All of the acts of Defendant Douglas Schuster complained of herein were acts for and on behalf of the marital community of Defendants Douglas Schuster and Cynthia Schuster.

5. Defendants Jordan T. Selmanson and Ashley N. Selmanson are husband and wife and are residents of Mohave County, Arizona. All of the acts of Defendant Jordan T. Selmanson complained of herein were acts for and on behalf of the marital community of Defendants Jordan T. Selmanson and Ashley N. Selmanson.

6. Defendants Richard Schiller and Kathleen Schiller are husband and wife and are residents of Mohave County, Arizona. All of the acts of Defendant Richard Schiller complained of herein were acts for and on behalf of the marital community of Defendants Richard Schiller and Kathleen Schiller.

7. Defendants Douglas Schuster, Jordan T. Selmanson and Richard Schiller were, at all relevant times, employed by Mohave County and were acting within the course and scope of their employment with the Mohave County Sheriff's Office.

8. Defendants Douglas Schuster, Jordan T. Selmanson and Richard Schiller at all times material hereto were acting under color of law.

9. Defendant, Mohave County, as the employer of Defendants Douglas Schuster, Jordan T. Selmanson and Ricahrd Schiller is vicariously liable for the acts or omissions of those Defendants, under the theory or *respondeat superior* with respect to the state law claims alleged herein.

**JURISDICTION AND VENUE**

10. This action is brought, in part, pursuant to 42 U.S.C. §1983 and the Fourth and Fourteenth Amendments to the United States Constitution.

11. This Court has jurisdiction of this action pursuant to 28 U.S.C. §1331 and 28 U.S.C. §1343.

11. This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. §1367(a).

12. The events that form the basis of Plaintiff's Complaint occurred in Mohave County, Arizona. Since all Defendants currently reside or work, or resided or worked at relevant time within the state of Arizona, venue is proper in this Court pursuant to 28 U.S.C. §1391(b).

13. Plaintiff has complied with A.R.S. §12-821.01 with respect to the state law claims and her notice of claim with respect to the state law claims has been denied by Defendants.

**FACTUAL BACKGROUND**

14. On February 13, 2017, the Mohave County Sheriff's Office received a 911 call at or about 6:48 p.m. reporting the discharge of a weapon in Topock, Arizona, by a man "acting strangely."

15. The man reportedly fired a weapon striking the ground in the immediate area where a neighbor was walking.

3

16. The Mohave County Sheriff's Office did not contact a supervisor in response to the 911 call.

17. The Mohave County Sheriff's Office did not contact "medical" in response to the 911 call.

18. The Mohave Country Sheriff's Office did not request "medical" stage near the location of the reported shooting.

19. Two Mohave County Sheriff's Office Deputies, Defendant Jordan T. Selmanson and Defendant Richard Schiller, responded to the scene of the reported shooting. Deputy Schiller traveled directly to the residence where the shooting suspect was reported to live.

20. Neither Deputies Selmanson nor Schiller contacted a supervisor before arriving at their destination.

21. Neither Deputies Selmanson nor Schiller requested "medical" stage near the residence to which they were directed.

22. While en route on the call, Deputy Selmanson and Deputy Schiller each checked their vehicle computer for information.

23. The residence Deputy Schiller traveled to was occupied by Plaintiff Sharline Krause and her son, decedent, Drey Krause.

24. Deputy Selmanson stopped to talk with the reported victim, Shanna Farris, before traveling to the Krause residence to join Deputy Schiller.

25. Deputies Selmanson and Schiller parked their vehicles on the street and both turned off their vehicle lights.

26. At all times relevant and material hereto, the Mohave County Sheriff's Office

4

Computers contained the telephone number for the Krause residence.

27. Deputies Selmanson and Schiller radioed "97" on scene at 7:14 p.m.

28. Neither Deputies Selmanson nor Schiller used a telephone, loud speaker, horn, emergency lights, or spotlight to contact the occupant or occupants of the Krause residence.

29. Neither Deputies Selmanson nor Schiller asked dispatch to call the telephone number of the Krause residence.

30. Neither Deputies Selmanson nor Schiller called the telephone number of the Krause residence.

31. Neither Deputies Selmanson nor Schiller attempted to communicate from a position of safety and cover with the occupant or occupants of the Krause residence.

32. Neither Deputies Selmanson nor Schiller attempted to communicate, from a distant position, with the occupant or occupants of the Krause residence.

33. Neither Deputies Selmanson nor Schiller anticipated that a man with a firearm would exit from the residence.

34. Neither Deputies Selmanson nor Schiller anticipated that a man holding a firearm and who was unable to understand commands would exit from the residence.

35. Neither Deputies Selmanson nor Schiller applied "priority-of-life" or "sanctity-of-life" principles.

36. Both Deputies Selmanson and Schiller approached the Krause residence.

37. Deputy Selmanson went to the exit door of the Krause residence.

38. Deputy Schiller went to the rear of the Krause residence.

39. Deputy Schiller observed medication inside the residence.

40. Deputy Selmanson knocked on the door of the Krause residence and then claims that he knocked a second time.

41. Deputy Selmanson claims that he announced "Sheriff's Office" and a porch light came on.

42. Deputy Schiller was walking towards Deputy Selmanson to advise him of the medication he saw inside the residence when the porch light came on.

43. The door to the residence was opened and Drey Krause began to exit the residence with a .410 shotgun in his hand.

44. The shotgun was not loaded with a cartridge capable of being fired.

45. Deputy Selmanson reportedly yelled for Drey Krause to put the gun down.

46. Drey Krause never said a word.

47. Deputy Selmanson then shot Drey Krause multiple times.

48. Deputy Selmanson did not know whether Drey was deaf, hard of hearing, disoriented, drunk, intoxicated, inebriated, stoned, or blinded by the porch light.

49. Deputy Selmanson placed himself in a position of danger.

50. Deputy Selmanson created the jeopardy in which he found himself when Drey Krause opened the door.

51. Deputy Selmanson provoked the need to use lethal force.

52. Use of lethal force could have been avoided if Deputy Selmanson had been properly trained.

53. Use of lethal force could have been avoided if Deputy Selmanson had used proper police procedures.

6

54. Use of lethal force could have been avoided if Deputy Selmanson had used "priority-of-life" or "sanctity-of-life" principles.

55. At 7:18 p.m. Deputy Selmanson radioed "out with subject."

56. At 7:19 p.m. Deputy Selmanson radioed, "Shots fired. Send medical."

57. After being shot, Drey Krause asked Deputy Selmanson, "Why did you shoot me?" and Deputy Schiller responded to Drey Krause that he was shot because he would not put down his gun.

58. After shooting Drey Krause, Deputy Selmanson left him, without providing medical assistance, to call a supervisor.

59. Neither Deputy Selmanson nor Deputy Sciller ever provided medical assistance to Drey Krause and, instead, Drey Krause was handcuffed as he lay dying in the carport of his residence.

60. Deputy Schiller allowed Drey Krause to remain on the ground bleeding while he waited for "medical" to arrive.

61. "Medical" did not arrive promptly because it had not been staged nearby.

62. Neither Deputies Selmanson nor Schiller asked for a medical helicopter to transport Drey Krause to the nearest trauma hospital.

63. Drey Krause was pronounced dead approximately forty-five minutes after being shot by Deputy Selmanson.

64. After Drey Krause was shot, Deputy Schiller entered the residence and encountered Plaintiff, Sharline Krause. He noted that a television inside the residence was turned up very loud.

65. Defendant, Mohave County, hired Deputy Selmanson less than two years before

Drey Krause's death despite the fact that his pre-employment screening documentation indicated his view that some people need to be shot.

66. Mohave County allowed Deputies Selmanson and Schiller to carry a firearm and interact with the public without any training on how to deal with intoxicated people, how to avoid confrontations where lethal force may be necessary and/or how to de-escalate tense situations.

### COUNT I - 42 U.S.C. §1983
### VIOLATION OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS - EXCESSIVE FORCE

67. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

68. The Fourteenth Amendment to the United States Constitution guarantees parents of an adult child a substantive due process liberty interest in the companionship of that child.

69. Deputies Selmanson and Schiller violated the substantive due process rights of Plaintiff, individually, when Drey Krause was shot and killed.

70. Deputies Selmanson and Schiller acted without legal justification and intended to cause harm to Drey Krause, unrelated to a legitimate object of arrest.

71. The conduct of Deputies Selmanson and Schiller was reckless, oppressive, and/or malicious so as to support an award of exemplary damages.

72. As a direct and proximate result of the conduct of Deputies Selmanson and Schiller, Drey Krause died resulting in harm, loss, and damage to Plaintiff.

### COUNT II - 42 U.S.C. §1983 - VIOLATION OF THE DUE PROCESS RIGHTS
### DENIAL OF MEDICAL CARE

73. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

8

74. The Fourteenth Amendment to the United States Constitution guarantees a parent a substantive due process liberty interest in the care, comfort, and companionship of their child.

75. At all times relevant, Deputies Selmanson and Schiller acted under color of law.

76. After Drey Krause was shot and placed into handcuffs, Drey Krause was a pretrial detainee.

77. Drey Krause was entitled to prompt, necessary, and proper first-aid by Deputy Selmanson.

78. Drey Krause was entitled to prompt, necessary, and proper first-aid by Deputy Schiller.

79. Drey Krause was entitled to prompt, necessary, and proper initial medical aid by Deputy Selmanson.

80. Drey Krause was entitled to prompt, necessary, and proper initial medical aid by Deputy Schiller.

81. Deputy Selmanson and Deputy Schiller were each intentionally and deliberately indifferent to the medical needs of Drey Krause.

82. The delay in obtaining medical care for Drey Krause resulted in substantial harm to Drey Krause and to Plaintiff.

83. Deputy Selmanson and Deputy Schiller knew, or should have known, that a person shot by a firearm and who was alive needed prompt, necessary, and proper first-aid.

84. Deputy Selmanson and Deputy Schiller knew, or should have known, that a person shot by a firearm and who was alive needed prompt, necessary and proper initial medical aid.

85. Drey Krause faced a substantial risk of serious harm or death from bleeding after

9

he was shot.

86. Deputy Selmanson and Deputy Schiller knew, or should have known of the substantial risk of serious harm or death from bleeding after Drey Krause was shot.

87. Deputy Selmanson and Deputy Schiller each were intentionally and deliberately indifferent to the risk of serious harm or death from bleeding after Drey Krause was shot.

88. Deputy Selmanson and Deputy Schiller each were intentionally and deliberately indifferent to the risk of serious harm or death from failing to provide prompt, necessary and proper medical care.

89. Deputy Selmanson and Deputy Schiller each made a conscious and intentional choice to disregard the consequences of their acts or omissions in failing to provide prompt first-aid or medical care while waiting for "medical" to arrive.

90. Deputy Selmanson and Deputy Schiller each disregarded such risk by failing to provide prompt first-aid or medical care while waiting for "medical" to arrive.

91. By failing to render prompt, necessary, and proper first-aid or prompt, necessary and proper medical care, Deputy Selmanson and Deputy Schiller deprived Drey Krause of the chance of survival from the gunshot wounds.

92. Deputy Selmanson and Deputy Schiller caused or contributed to the death of Drey Krause by failing to provide prompt first-aid or medical care while waiting for "medical" to arrive.

93. Allowing Drey Krause to bleed to death was excessive and unreasonable because Deputy Selmanson and Deputy Schiller disregarded standard police principles such as rendering aid to a person in need of medical attention.

94. The denial of medical care by Deputy Selmanson and Deputy Schiller deprived Drey Krause of his right to be free from deliberate indifference to serious medical needs applied to state actors by the Fourteenth Amendment to the United States Constitution.

95. Deputy Selmanson and Deputy Schiller knew that failure to provide timely medical treatment to Drey Krause could result in further significant injury or the unnecessary and wanton infliction of pain or death, but they disregarded Drey Krause's serious medical need, causing Drey Krause great bodily harm and death.

96. The delay in medical care provided to Drey Krause resulted in substantial harm to him.

97. As a direct and proximate result of the conduct of Deputies Selmanson and Schiller, Drey Krause died resulting in harm, loss, and damage to Plaintiff.

98. The conduct of Deputy Selmanson and Deputy Schiller was reckless, oppressive, and/or malicious so as to justify an award of exemplary damages.

**COUNT II - 42 U.S.C. §1983 - VIOLATION OF PLAINTIFF'S SUBSTANTIVE DUE PROCESS RIGHTS**
**FAILURE TO TRAIN AND SUPERVISE**

99. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

100. Mohave County, through the Mohave County Sheriff's Office and Defendant Douglas Schuster, are the official policy makers for the Mohave County Sheriff's Office and the deputies within that office.

101. Mohave County has the authority and responsibility to establish policy for the Mohave County Sheriff's Office and it's deputies and to properly train and supervise those

1 deputies.

2  102.  The Mohave County Sheriff's Office records concerning the training of Deputy Selmanson do not indicate that Deputy Selmanson received any training for either: (i. less than lethal force; ii. when to shoot and when not to shoot; iii. deescalation techniques for control of a subject; iv. priority-of-life principles or sanctity-of-life principles; v. the four "C's"; or, iv. recognizing when a subject does not pose a grave or lethal danger).

103.  Deputy Selmanson was not properly trained in how to determine if a person poses a risk of eminent bodily harm to the officer or member of the public.

104.  Deputy Selmanson was not properly trained on how and when to use deadly force.

105.  Deputy Selmanson was not properly trained in less than lethal methods of controlling a subject.

106.  Deputy Selmanson was not properly trained when not to use deadly force.

107.  Deputy Selmanson was not properly trained in deescalation techniques for control of a subject.

108.  Deputy Selmanson was not properly trained in recognizing when a subject does not pose a grave or lethal danger.

109.  Deputy Selmanson was not properly trained when to shoot and when not to shoot his service weapon.

110.  Deputy Selmanson was not properly trained in priority-of-life or sanctity-of-life principles.

111.  Upon information and belief, Deputy Schiller also was not properly trained in all of the areas identified above.

112. At all relevant times, Mohave County was indifferent to the training of Deputy Selmanson and Deputy Schiller and others within the Mohave County Sheriff's Office and by reason of such indifference, failed in it's training policies to train it's deputies in the appropriate, lawful, and constitutional policies, procedures, and protocols when dealing with intoxicated persons, how to avoid confrontations where lethal force may be necessary, and how to de-escalate situations where lethal force might be necessary.

113. The failure to train Deputy Selmanson and Deputy Schiller and others with respect to acceptable policies and procedures when lethal force might be necessary was certain to lead to injury and/or death. The failure of Defendant, Mohave County, to properly supervise and train Deputy Selmanson was a direct and proximate result of Drey Krause's death.

114. The failure to train Deputy Selmanson and Deputy Schiller violated the substantive due process rights of Plaintiff and deprived Plaintiff of her son's love, affection, care, and support.

115. At all times relevant and material, Schuster and Mohave County had a duty to properly supervise Deputy Selmanson and Deputy Schiller.

116. Schuster and Mohave County did not supervise Deputy Selmanson after he was dispatched on the 911 call and while he was out on the 911 call.

117. Schuster and Mohave County did not supervise Deputy Schiller after he was dispatched on the 911 call and while he was out on the 911 call.

118. Schuster and Mohave County did not supervise the dispatchers after Deputy Selmanson was dispatched on the 911 call and while he was out on the 911 call.

119. Schuster and Mohave County failed to properly supervise Deputy Selmanson.

1   120.  Schuster and Mohave County failed to properly supervise Deputy Schiller.

2   121.  Schuster and Mohave County failed to properly supervise Deputy Selmanson and Deputy Schiller about:

    a.  When to call for a supervisor;

    b.  When to call for "medical" to stage nearby;

    c.  When to "surround and call out;"

    d.  When not to walk up to and bang on the door of a dwelling believed to be occupied by a man acting strangely who had discharged a firearm in the direction of a human being;

    e.  When to use less than lethal force;

    f.  When to shoot and when not to shoot;

    g.  In de-escalation techniques for control of a subject;

    h.  In priority-of-life principles or sanctity of life principles;

    i.  In the four "C's;"

    j.  How to recognize when a subject does not pose a grave or lethal danger;

    k.  When to render first-aid and/or medical care;

122.  Schuster and Mohave County failed to properly supervise the dispatchers on duty at the time of the events relevant and material to this action and this failure was certain to lead to serious injury or death.

123.  Schuster and Mohave County failed to properly supervise the dispatchers on duty about:

    a. When to call for a supervisor;

      b. When to call for "medical" to stage nearby;

      c. How to handle calls where a rookie is dispatched.

124. As a direct and proximate result of the conduct of Schuster, Drey Krause died resulting in harm, loss and damage to Plaintiff.

125. As a direct and proximate result of the conduct of Mohave County, Drey Krause died resulting in harm, loss and damage to Plaintiff.

126. As a direct and proximate result of the failures to train Deputy Selmanson and Deputy Schiller, Drey Krause died resulting in harm, loss and damage to Plaintiff.

## COUNT III - § 1983 - MUNICIPAL LIABILITY

127. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

128. The Fourteenth Amendment to the United States Constitution guarantees a parent a substantive due process liberty interest in the care, comfort and companionship of a child.

129. Mohave County, MCSO and MCSO's supervising and managing employees, acting intentionally and/or with gross negligence, reckless disregard and deliberate indifference to the rights and liberties of the public in general, and of Drey Krause, knowingly maintained, enforced and applied an official recognized custom, policy, and practice of inadequately supervising, training, controlling, assigning, investigating and disciplining MCSO deputies and dispatchers including maintaining inadequate procedures for reporting, supervising, investigating, reviewing, disciplining and controlling the conduct of MCSO employees.

130. The policies, practices, and customs implemented, maintained and toleration by MCSO and Schuster were certain to, and were an influential force behind the shooting of Drey

Krause and his injuries and death.

131. As a direct and proximate result of the conduct of Mohave County, MCSO and Schuster, Drey Krause was injured and died resulting in harm, loss and damage to Plaintiff.

## COUNT III - WRONGFUL DEATH

132. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

133. This claim for relief is asserted against Defendants by Plaintiff, Sharline Krause, individually and on behalf of all statutory beneficiaries of Drey Krause.

134. Pursuant to §12-611, et seq., liability for wrongful death exists if a persons death is caused by "wrongful act, neglect, or default." In this matter, Defendants' "wrongful act, neglect, or default" includes negligence or gross negligence as alleged in this Complaint.

135. As a result of the death of Drey Krause, caused by Defendants, Plaintiff, Sharline Krause, and the statutory beneficiaries of Drey Krause suffered loss of love, affection, and companionship for which they are entitled to recover under Arizona's Wrongful Death Act.

136. As a result of Defendants' wrongful acts, Plaintiff, Sharline Krause, and the statutory beneficiaries of Drey Krause have suffered pain, grief, sorrow, anguish, shock, and mental suffering in the past, present, and future, all proximately caused by Defendants, for which they are entitled to recover under Arizona's Wrongful Death Act.

137. The actions of Mohave County, Schuster, Deputy Selmanson and Deputy Schiller were negligent and grossly negligent and those actions include, but are not limited to:

    a. Failure to call a supervisor to the scene before Drey Krause was shot and killed.

      b.    Failure to use means other than a face-to-face confrontation with Drey Krause while investigating the shooting incident.

      c.    Failure to call for medical providers before contact with Drey Krause.

      d.    Failure to call out Drey Krause from the residence from a distance.

      e.    Failure to render medical assistance after Drey Krause was shot.

      f.    Failure to properly train and supervise.

138.    A trial by jury is demanded.

WHEREFORE, Plaintiff requests judgment against Defendants as follows:

      a.    For special damages, including, but not limited to the cost of care for Plaintiff as a result of the death of her son, her caregiver;

      b.    For other general damages to the surviving statutory beneficiaries for the wrongful death of Drey Krause;

      c.    For consequential and emotional damage to the surviving statutory beneficiaries;

      d.    For exemplary damages to the extent permitted by law;

      e.    For taxable costs and pre-judgment and post-judgment interest to the extent permitted by law;

///

///

///

///

///

      f.      For attorneys' fees pursuant to 42 U.S.C. §1988;

      g.      For such other and further relief as the Court deems just and proper.

RESPECTFULLY SUBMITTED this 5th day of October, 2017.

      MURPHY, SCHMITT, HATHAWAY & WILSON, P.L.L.C.

      By:   s/Milton W. Hathaway, Jr.
            Milton W. Hathaway, Jr., Esq.
            Attorneys for Plaintiffs

**CERTIFICATE OF SERVICE**

I, Milton W. Hathaway, Jr., an attorney, do hereby certify that on this 5th day of October, 2017, I electronically submitted the foregoing **FIRST AMENDED COMPLAINT** using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Georgia A. Staton, Esq.
JONES, SKELTON & HOCHULI, P.L.C.
40 North Central Avenue, Suite 2700
Phoenix, AZ 85004
gstaton@jshfirm.com


MURPHY, SCHMITT, HATHAWAY & WILSON, P.L.L.C.


By: s/Milton W. Hathaway, Jr.
Milton W. Hathaway, Jr., Esq.